UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

|  |  |
|---|---|
| DURAMED PHARMACEUTICALS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WATSON LABORATORIES, INC., ) <br> ) <br> Defendant. ) <br> ) | 3:08-CV-00116-LRH-RAM <br><br> ORDER |

Before the court are two motions: Defendant Watson Laboratories, Inc.'s ("Watson") motion to transfer venue pursuant to 28 U.S.C. § 1404(a) (#15[1]) and Plaintiff Duramed Pharmaceuticals, Inc.'s ("Duramed") motion to dismiss and strike counterclaims and affirmative defenses (#38).

**I.    Factual and Procedural History**

Plaintiff Duramed is a Delaware corporation with an established place of business in Montvale, New Jersey.  (Compl. (#1) at ¶ 2.)  Duramed is a pharmaceutical company that provides female healthcare products, including the oral contraceptive Seasonique.  (*Id.* at ¶ 2, 9.)  Defendant Watson is a Nevada corporation with its principal place of business in Corona, California.  (Gwinn Decl. (#15) at ¶ 2; Compl. (#1) at ¶ 3.)  Watson is a pharmaceutical company that sells, markets,

---

[1]Refers to the court's docket

and distributes pharmaceutical products from its principal place of business in Corona. (Gwinn Decl. (#15) at ¶ 2.)

In 2008, Watson filed an amended Abbreviated New Drug Application ("ANDA") with the Food and Drug Administration ("FDA") seeking approval to market a generic equivalent of Seasonique. (*Id.* at ¶ 3, 4.) The decision to prepare and submit an ANDA for Seasonique was carried out at Watson's corporate headquarters in Corona. (*Id.* at ¶ 3.) Studies for Watson's ANDA were commissioned and interpreted in California. (*Id.*)

Within the amended ANDA, Watson included a "certification of invalidity, unenforceability, and/or non-infringement" of the United States Patent No. 7,320,969 ("the '969 patent") assigned to Duramed. (*Id.* at ¶ 4.) The FDA's Orange Book,[2] lists the '969 patent as a patent that could reasonably be asserted against anyone who, without authority from Duramed, sells a generic version of Seasonique. *See* 21 U.S.C. § 355(b)(1). On March 6, 2008, Duramed filed the present action in this court, alleging that Watson's ANDA infringes Duramed's '969 patent. (Compl. (#1) at ¶ 18.)

**II.  Motion to Transfer**

Watson's motion to transfer asks this court to transfer this case to the United States District Court for the Central District of California. Because Watson has not shown that transfer would be in the interest of justice, the motion is denied.

    **A.  Legal Standard**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The determination of a motion to transfer rests within the sound discretion of the district court. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (*citing Stewart*

---

[2]The Orange Book is a register published by the FDA that provides notice of patents covering name brand drugs. *Merck & Co., Inc. v. Hi-Tech Pharmacal Co.*, 482 F.3d 1317, 1319 (Fed. Cir. 2007).

1  *Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  In determining whether granting a motion to
2  transfer is appropriate, the court must weigh several factors.  *Id.*  The court is free to consider such
3  nonexclusive factors as "(1) the location where the relevant agreements were negotiated and
4  executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of
5  forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's
6  cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums,
7  (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses,
8  and (8) the ease of access to sources of proof."  *Jones*, 211 F.3d at 498-99.

9        In examining a § 1404(a) motion, the plaintiff's choice of forum is entitled to considerable
10 weight, *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987), and the defendant must make a "strong
11 showing of inconvenience to warrant upsetting the plaintiff's choice of forum[,]" *Decker Coal Co.*
12 *v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  However, "[i]f the operative
13 facts have not occurred within the forum of original selection and that forum has no particular
14 interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal
15 consideration."  *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).  In showing
16 that change of venue is appropriate, "[i]t is not enough, without more, to merely shift the
17 inconvenience from one party to another."  *Galli v. Travelhost, Inc.*, 603 F. Supp. 1260, 1262 (D.
18 Nev. 1985) (*citing Van Dusen v. Barrack*, 376 U.S. 612, 645-646 (1964)).

19     **B.  Discussion**

20       Watson has failed to meet its burden of showing that transfer is warranted in this case.
21 Perhaps Watson's strongest argument in support of transfer is that Duramed's choice of forum
22 should be given minimal consideration because the operative facts giving rise to this suit did not
23 occur in Nevada.  In patent infringement cases, the preferred forum is the center of gravity of the
24 accused activity, *Saint-Gobain Calmar, Inc. v. Nat'l Products Corp.*, 230 F. Supp. 2d 655, 660
25 (E.D. Pa. 2002), which is where the development, testing, research, production, sales, and
26

3

1  marketing for the accused product occurs, *S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F. Supp.
2  1185, 1188 (N.D. Ill. 1983).

3        In the present case, the only evidence Watson offers as to its activity within the Central
4  District of California is the declaration of Janie Gwinn, Director in the Research and Development
5  Regulatory Affairs Department of Watson. Ms. Gwinn states that "the strategic decision to prepare
6  and submit an ANDA for SEASONIQUE® . . . was carried out at Watson's corporate headquarters
7  in Corona, California." (Gwinn Decl. (#15) at ¶ 8.)[3] This evidence is insufficient to meet Watson's
8  burden of showing that the center of gravity of the allegedly infringing activity occurred in the
9  Central District of California. Of course, at present, Watson has not yet manufactured or sold a
10 generic version of Seasonique. Thus, those factors are not relevant in determining this case's
11 center of gravity. However, Ms. Gwinn's statement concerning the ANDA does not show where
12 development, testing, and research of the proposed generic equivalent for Seasonique occurred.
13 Therefore, Watson has not demonstrated that the Central District of California is due any special
14 consideration as this case's center of gravity.

15       Moreover the balance of the relevant factors enunciated in *Jones v. GNC Franchising, Inc.*,
16 211 F.3d 495, 498 (9th Cir. 2000) does not compel transfer. With respect to the state that is most
17 familiar with the governing law, because this case arises under federal law, this court has the same
18 familiarity as the United States District Court for the Central District of California.

19       With respect to the plaintiff's choice of forum, Duramed chose to file this case in Nevada.
20 While this fact does not carry the same weight it would be afforded if the operative facts arose here,
21 it is still entitled to substantial consideration.

---

[3] Ms. Gwinn also states that "the required bioequivalency studies in human patients for Watson's ANDA were commissioned and interpreted in California. Therefore, to my knowledge all (or substantially all) potential witnesses and documents relating to the research and development of Watson's generic SEASONIQUE® product are located in California." (*Id.*) Conspicuously absent from these statements, however, is any indication as to which part of California Ms. Gwinn is referring to.

4

In regard to the parties' contacts with the forum, Duramed has not presented any evidence that it has contacts with Nevada. However, Watson is a Nevada corporation and therefore has chosen Nevada as its domicile. On balance, this factor weighs against transfer.

With respect to the costs of litigation in the two forums, Watson's sole argument is that litigation in Nevada would require Watson to continue to incur local counsel fees and related costs. While this may be true, transferring to the Central District of California may only serve to shift the same burden to Duramed. Moreover, Watson has not provided any competent evidence in support of its argument. Thus, this factor weighs neither in favor or against transfer.

Concerning the availability of compulsory process to compel attendance of unwilling nonparty witnesses, Watson does not identify any nonparty witness who is unwilling to testify absent a court order. Thus, this factor does not weigh in favor of transfer.

Finally, the eighth *Jones* factor–the ease of access to sources of proof–does not weigh in favor of transfer. Ms. Gwinn states in her declaration that "to my knowledge, all (or substantially all) potential witnesses and documents relating to the research and development of Watson's generic SEASONIQUE® product are located in California." (Gwinn Decl. (#15) at ¶ 8.) Watson, however, makes no indication as to where in California these potential witnesses and documents are. Furthermore, the statement of one witness, who presumably knows nothing about patent law, as to the sources of proof an infringement action is not very probative.

In conclusion, none of the factors weigh in favor of transfer. Although Watson's burden is lessened because the operative facts of this case do not appear to have arisen in Nevada, Watson has still failed to show that the interest of justice requires transfer of this case. Watson's motion to transfer is therefore denied.

### III.  Duramed's Motion to Dismiss and Strike

Duramed moves this court to dismiss Watson's counterclaim for a declaration of invalidity of the '969 patent. Duramed also asks this court to strike the second and third affirmative defenses

5

1 in Watson's answer.

**A. Motion to Dismiss**

In considering "a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted).

Watson's counterclaim for a declaration of invalidity of the '969 patent is supported by an allegation that "[t]he claims of the '969 patent are invalid because they fail to comply with one or more of the statutory requirements for patentability set forth in 35 U.S.C. §§ 101 *et seq.*" (Answer (#13) at ¶ 29.) Duramed is correct that this allegation fails to state a claim. By failing to specify which of the many possible grounds of patent invalidity it is relying upon, Watson does not put Duramed on fair notice as to the basis of its counterclaim.[4] *See also Qarbon.com v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1051 (N.D. Cal. 2004) (rejecting as "radically insufficient" under Rule 12(b)(6) the claim that a patent was "invalid and void under the provisions of Title 35, United States Code §§ 100 *et seq.*, and specifically, §§ 101, 102, 103, and/or 112"). Duramed's motion to dismiss Watson's counterclaim for a declaration of invalidity of the '969 patent is therefore granted.

///

---

[4] Watson's January 22, 2008, letter to Duramed (Jan. 22, 2008, Letter (#46), Ex. A) does not calculate into whether Watson's counterclaim survives Duramed's motion to dismiss. In considering a motion to dismiss for failure to state a claim, a court is limited to the pleading, material properly submitted as part of the pleading, and matters subject to judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). Watson's letter is none of these.

### B. Motion to Strike

Duramed also seeks to strike the second and third affirmative defenses listed in Watson's answer. Pursuant to Federal Rule of Civil Procedure 12(f), "The court may strike from a pleading an insufficient defense . . . ." "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979) (*citing Conley v. Gibson*, 355 U.S. 41, 47-48 (1957)). Thus, the court employs the same standard for evaluating Duramed's motion to strike as it applied to Duramed's motion to dismiss. *See also Qarbon.com v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1048 (N.D. Cal. 2004) ("Affirmative defenses are governed by the same pleading standard as complaints.")

Watson's second affirmative defense provides, "The claims of the '969 patent are invalid because they fail to comply with one or more of the statutory requirements for patentability set forth in 35 U.S.C. §§ 101 *et seq.*" (Answer (#13) at 5:7-8.) This affirmative defense is identical to Watson's counterclaim for a declaration of invalidity of the '969 patent. Because the same standard applies to each of these matters–that is, they must put Duramed on fair notice as to their substance–the court grants Duramed's motion to strike the second affirmative defense.

Finally, the court will deny Duramed's motion to strike the third affirmative defense, which states, "Any additional defenses or counterclaims that discovery may reveal, including, but not limited to, unenforceability of the '969 patent because of inequitable conduct committed during prosecution of this patent." (*Id.*) Unlike the second affirmative defense, Duramed makes no showing that it will be prejudiced by inclusion of this affirmative defense in the answer. In its opposition, Watson asserts that it has not yet pled inequitable conduct and further asserts its third affirmative defense is only intended to "reserve[] its right to plead inequitable conduct in the event that it uncovers evidence supporting this defense in the course of discovery." (Opp'n (#46) at 10:3-5.) While Watson's assertion essentially admits that the third affirmative defense is superfluous,

the court will not strike it to merely polish the pleadings.  Duramed's motion to strike the third affirmative defense is therefore denied.  *See also Canadian St. Regis Band of Mohawk Indians v. New York*, 278 F. Supp. 2d 313, 325 (N.D.N.Y. 2003) (stating that "[t]he requirement of prejudice to the plaintiff may be satisfied if the inclusion of the defense would result in increased time and expense of trial, including the possibility of extensive and burdensome discovery . . . .") (emphasis omitted).

IT IS THEREFORE ORDERED that Defendant Watson's Motion to Transfer (#15) is DENIED.

IT IS FURTHER ORDERED that Plaintiff Duramed's Motion to Dismiss and Strike Defendant's Counterclaims and Affirmative Defenses (#38) is GRANTED in part and DENIED in part.  Watson is granted 20 days from the date of this order to amend the dismissed counterclaim and the stricken affirmative defense.

IT IS SO ORDERED.

DATED this 12th day of December, 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE